UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

L3HARRIS TECHNOLOGIES, INC.,

      Plaintiff,

v.                                      Case No: 6:24-cv-602-JSS-RMN

MOOG INC.,

      Defendant.

_____/

## ORDER

Plaintiff, L3Harris Technologies, Inc., moves to dismiss the counterclaim (Dkt. 18 at 21–46) filed by Defendant, Moog Inc., for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 20.)  Defendant opposes the motion. (Dkt. 24.)  For the reasons outlined below, the court denies the motion.

## BACKGROUND[1]

The parties work in the aerospace industry.  (Dkt. 18 at 21.)  Plaintiff is a general contractor with a history of working on projects for the United States government.  (*Id.* at 21–22.)  Defendant constructs components for satellites.  (*Id.* at 21, 23–24.)  In 2020 and 2021, the parties entered into four contracts.  (*Id.* at 24.)  Through the contracts,

---

[1] The court accepts the well-pleaded factual allegations in the counterclaim as true and construes them in the light most favorable to Defendant.  *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).  In addition, although the parties' contracts are not attached to the counterclaim, the court considers the contracts because they are central to Defendant's claims and their authenticity is not in dispute.  *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (explaining that the court did not err when in ruling on a motion to dismiss, it considered a contract not attached to the complaint because the contract was central to the plaintiff's claim and its authenticity was not challenged).

the parties agreed that in exchange for payment from Plaintiff, Defendant would build satellite components required for two government projects and would deliver the components to Plaintiff.  (*Id.* at 22, 24; *see* Dkts. 26-1, 26-6, 26-7, 26-9.)

Each contract incorporates Plaintiff's standard terms.  (Dkt. 18 at 24; *see* Dkts. 26-1, 26-6, 26-7, 26-9.)  Each contract includes provisions about payment, the scope of the work to be performed, modification of the contract, changes to the work and equitable adjustments resulting from change orders, limitation of Defendant's liability to Plaintiff, and Defendant's responsibility to supervise its own subcontractors.  (*See, e.g.*, Dkt. 26-1 at 15–18, 23, 29.)  Each contract also contains a disputes clause, which states that Florida law generally governs the contract and which affords the parties "recourse to an action at law or in equity" to resolve disputes, and a merger clause, which provides that the contract "supersedes any prior offers, negotiations, and agreements concerning the [contract's] subject matter . . . and constitutes the entire agreement between the [p]arties."  (*E.g.*, *id.* at 15, 28.)  The contracts' modification provisions purport to prohibit modification through subsequent course of dealing or oral agreement.  (*E.g.*, *id.* at 17.)

Defendant alleges that while it concentrated on constructing satellite components in accordance with the contracts, Plaintiff demanded that Defendant "make numerous, significant changes to . . . designs and specifications" for the satellite components.  (Dkt. 18 at 25–26.)  In Defendant's words, Plaintiff "requested most of these changes orally" and, "in most cases, sought to expand the scope of [Defendant]'s work beyond what had been originally contemplated by the parties."

(*Id.* at 26.)  Defendant attributes the numerous changes to the inadequacy and lack of clarity of Plaintiff's initial instructions and to Plaintiff's failure to "anticipate[] the work it would need [Defendant] to perform." (*Id.* at 28.)  Defendant categorizes the changes demanded by Plaintiff as either formal or constructive: whereas formal changes went through a process involving written estimates and executed change orders, constructive changes were not memorialized in such writings.  (*See id.* at 25–31.)

The estimates Defendant prepared for the formal changes described how the changes "would impact the cost of [Defendant]'s overall work and the project's schedule" and requested that Plaintiff "equitably adjust the . . . price and schedule accordingly." (*Id.* at 26.)  "More often than not," Defendant claims, after it presented Plaintiff with an estimate, Plaintiff "demanded that [it] revise the [estimate] to reduce the proposed cost and schedule impact." (*Id.*)  According to Defendant, Plaintiff frequently "demand[ed] multiple rounds of revisions until [it] received the terms it wanted." (*Id.*)  Accordingly, Defendant states, when the terms of the estimates were finalized in corresponding change orders executed by the parties, the change orders "did not reflect the actual costs that [Defendant] incurred in implementing the changes, or the actual amount of time that such changes required." (*Id.* at 28.)  Indeed, Defendant claims that the change orders often "departed from the terms that had been agreed upon in the [estimate] or were otherwise inadequate to properly compensate [Defendant] for its time and costs." (*Id.* at 27.)  Further, in Defendant's view, "some change orders contained terms that were impossible to achieve." (*Id.*)

Allegedly, to get Defendant to go along with the revisions, Plaintiff gave Defendant "assurances that [Plaintiff] would 'make good' on the additional costs it knew [Defendant] was incurring." (*Id.* at 26.) "Based on these assurances," Defendant claims, it continued its work and "incurred significant additional costs." (*Id.*)

As to the constructive changes, Plaintiff allegedly interfered with Defendant's work by having its employees "communicate directly with" Defendant's employees "to demand that [Defendant] complete additional tasks beyond [Defendant]'s agreed scope of work." (*Id.* at 29.) According to Defendant, Plaintiff also "improperly contacted [Defendant]'s suppliers . . . without [Defendant]'s permission and without a . . . representative [from Defendant] present." (*Id.* at 30.)

The government projects experienced significant delays, which the parties attribute to one another. (*See* Dkts. 1, 18.) As relevant here, Defendant blames the delays on Plaintiff's "significant and repeated changes to [Defendant]'s scope of work, refusals to accept reasonable schedule adjustments to accommodate the additional work, and delay in providing necessary parts" to Defendant. (Dkt. 18 at 36.) Given the delays and Defendant's alleged delivery of satellite components that did not meet agreed specifications, Plaintiff filed a complaint against Defendant for breaches of the four contracts. (Dkt. 1.) Defendant filed an answer denying any liability to Plaintiff, raising a variety of affirmative defenses (some of which go to the validity of the contracts), and asserting a counterclaim. (Dkt. 18.) In general, Defendant complains in the counterclaim that although it performed its contractual obligations by building

- 4 -

and delivering the satellite components, Plaintiff has withheld payment from it and has failed to compensate it for the extra work Plaintiff required it to do.  (*See id.*)

## APPLICABLE STANDARDS

In deciding a motion to dismiss a counterclaim for failure to state a claim, a court "accept[s] the allegations in the [counterclaim] as true and construe[s] them in the light most favorable to the [defendant]."  *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim [in a counterclaim] has facial plausibility when the [defendant] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged."  *Id.*  "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Generally, when analyzing a motion to dismiss for failure to state a claim, a court considers only the four corners of the counterclaim and the exhibits attached to the counterclaim.  *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023).  However, "a document outside the four corners of the [counterclaim] may . . . be considered if [the document] is central to the [defendant]'s claims and is undisputed in terms of authenticity."  *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th

Cir. 2005); *see Al-Thani v. Shadow Marine, LLC*, No. 10-60434-CV-JORDAN, 2010 U.S. Dist. LEXIS 157569, at *5 n.1 (S.D. Fla. Dec. 13, 2010) (considering documents not attached to a counterclaim on a motion to dismiss because the documents were central to the counterclaim and undisputedly authentic).

## ANALYSIS

In its counterclaim, Defendant sues for breach of contract (counts I through IV) and breach of the implied covenant of good faith and fair dealing (count V) and asserts alternative claims of unjust enrichment (count VI), quantum meruit (count VII), and promissory estoppel (count VIII). (Dkt. 18 at 37–45.) *See* Fed. R. Civ. P. 8(d)(2)–(3) (permitting parties to bring alternative and inconsistent claims). Plaintiff moves to dismiss each count for failure to state a claim. (Dkt. 20 at 13–25.) Although Defendant's counterclaim is silent as to the governing law, (*see* Dkt. 18), the parties agree that Florida law controls Defendant's claims, (*see* Dkts. 20, 24; *see also, e.g.*, Dkt. 26-1 at 28 (providing that Florida law generally governs the parties' contracts)). *See Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies."). The court considers Defendant's claims in turn. Because the unjust enrichment and quantum meruit counts share the same elements, *see Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013), and Plaintiff makes the same arguments against these counts, (Dkt. 20 at 21–24), the court discusses the counts together.

### 1. Breach of Contract

A breach of contract claim under Florida law has three elements: (1) the existence of a valid contract, (2) a material breach of the contract, and (3) damages caused by the breach. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019). In counts I through IV of its counterclaim, Defendant asserts that Plaintiff breached the four contracts. (Dkt. 18 at 37–40.) Defendant alleges that each contract was valid and enforceable, that Defendant performed its obligations under each contract, that Plaintiff materially breached each contract, and that for each contract, Plaintiff's breaches caused Defendant "significant damages." (*Id.* at 38–40.) Defendant states that Plaintiff breached each contract in three ways: (1) by "withholding payments" from Defendant, (2) by "submitting significant[,] . . . repeated," and, for two contracts, "expansive change requests" that "deviated from the original scope and specifications of" the agreed work, and (3) by "failing to provide equitable compensation to [Defendant] for the additional costs associated with [Plaintiff]'s changes." (*Id.*)

Plaintiff does not dispute that Defendant has satisfied the first and third elements, (*see* Dkt. 20; Dkt. 24 at 6, 12), and from the allegations in the counterclaim, (Dkt. 18 at 21–40), the court concludes that Defendant has plausibly pleaded these elements. Instead, Plaintiff concentrates on the second element, making five arguments about the alleged breaches. (Dkt. 20 at 13–19.) First, Plaintiff argues that its withholding of payments from Defendant based on Defendant's delay in delivering the satellite components cannot constitute a breach because Plaintiff complied with

the contracts and with Fla. Stat. § 672.717 when it withheld the payments and because the contracts not only authorized Plaintiff to withhold a disputed amount as a setoff but also made clear that a setoff was not a breach. (Dkt. 20 at 18–19.)  Second, in Plaintiff's view, Defendant cannot base breach of contract claims on Plaintiff's repeated change requests because the contracts authorized Plaintiff to make changes to the work without limiting the number or frequency of the changes. (*Id.* at 14.) Third, Plaintiff contends, Defendant cannot claim that Plaintiff breached the contracts by making formal change requests that exceeded the scope of the agreed work or by failing to compensate Defendant equitably for the changes because Defendant expressly agreed to all terms of an adjustment when Defendant executed the change order for the adjustment. (*Id.* at 16–17.)  Fourth, Plaintiff maintains that a constructive change cannot form the basis of a breach of contract claim here because the contracts bar modification through course of dealing and reliance on oral statements. (*Id.* at 17–18.)  Fifth, according to Plaintiff, Defendant "has not—and cannot—allege" that for the complained-of changes, Defendant satisfied conditions precedent. (*Id.* at 15–18.)

The court rejects Plaintiff's arguments as unpersuasive.  First, with respect to the withholding of payments, Defendant alleges that "[d]espite having received all" the components that Defendant "was contractually obligated to provide, [Plaintiff] has improperly withheld tens of millions of dollars" on the basis of delays that Plaintiff in fact caused through its "significant and repeated changes to [Defendant]'s scope of work, refusals to accept reasonable schedule adjustments to accommodate the additional work, and delay in providing necessary parts and components to

[Defendant]." (Dkt. 18 at 36.)  The contracts require Plaintiff to pay Defendant.  (*E.g.*, Dkt. 26-1 at 17.)  Although they authorize Plaintiff to pay Defendant "less any payments in dispute," (*id.*), they also authorize Defendant to seek "recourse to an action at law or in equity" to decide any payment disputes, (*id.* at 28), and do not expressly limit Plaintiff's liability to Defendant for breach of contract regarding payments withheld, (*see id. passim*; *see also id.* at 29 (a provision expressly limiting Defendant's liability to Plaintiff)).  *See Rosenberg v. Cape Coral Plumbing, Inc.*, 920 So. 2d 61, 64 (Fla. Dist. Ct. App. 2005) ("Contract clauses that limit liability are valid and enforceable *provided the intention to limit liability is made clear in the contract*." (emphasis added)).  Accordingly, Plaintiff has not established that Defendant cannot base its breach of contract claims on payments that have allegedly been "improperly withheld." (Dkt. 18 at 36.)  *See Ryder v. LifeStance Health Grp., Inc.*, No. 6:22-cv-2050-RBD-RMN, 2024 U.S. Dist. LEXIS 47019, at *15, *18–19 (M.D. Fla. Feb. 12, 2024) (noting that although the parties' contract "authorize[d] [the defendant] to make . . . deductions" from the plaintiff's contracted-for compensation, the plaintiff "dispute[d] the propriety of [the] deductions," and concluding that the plaintiff's allegations of "improper deductions from his compensation" "plausibly establish[ed] a breach" under Florida law).

Further, insofar as Plaintiff's first argument depends on Fla. Stat. § 672.717, this statute allows a buyer to "deduct [from its payments to a seller] all or any part of the damages resulting from any breach of the contract" between the buyer and the seller. *Id.*  However, here, Defendant denies breaching any contract with Plaintiff.  (*See* Dkt.

18 at 14–17.)  Thus, in the light most favorable to Defendant, *see Henley*, 945 F.3d at 1326, Plaintiff's reliance on section 672.717 is unavailing.  *See Stanley Indus. of S. Fla., Inc. v. AIM Garments Corp.*, No. 16-62658-CIV-ZLOCH, 2019 U.S. Dist. LEXIS 43934, at *9 (S.D. Fla. Mar. 15, 2019) ("*If [the d]efendant has breached its contract with [the p]laintiff, . . . then* [the p]laintiff may refuse to pay [the d]efendant if it has informed [the d]efendant that it is doing so." (emphasis added)).

As to Plaintiff's second argument, Defendant does not allege that the number or frequency of Plaintiff's change requests in and of itself amounts to a breach; rather, Defendant alleges that Plaintiff breached the contracts through changes that deviated from the scope of the work as originally agreed.  (Dkt. 18 at 38–40.)  In its response to Plaintiff's motion, Defendant states that Plaintiff breached provisions requiring modifications to be in writing when Plaintiff "orally demand[ed] that [Defendant] implement numerous significant changes that were not contemplated in the []contracts, and which effectively expanded [Defendant]'s scope of work."  (Dkt. 24 at 7–8 (internal quotation marks omitted).)  According to Defendant, "[Plaintiff] further breached the []contracts by making changes to [Defendant]'s scope of work beyond the exclusive categories of work [Plaintiff] was permitted to change."  (*Id.* at 8.)  Because Defendant's allegations focus on how the changes affected the scope of work rather than on the number or frequency of the changes, (*see id.* at 7–12; Dkt. 18 at 38–40), Plaintiff's second argument is unpersuasive.  *See Clear Spring Prop. & Cas. Co. v. Viking Power LLC*, 608 F. Supp. 3d 1220, 1228 (S.D. Fla. 2022) (rejecting as "beside the point" an argument that the court should dismiss a breach of warranty count for

failure to state a claim).

Plaintiff's third argument, that Defendant agreed to the terms of an adjustment when Defendant executed the change order for the adjustment, fails to construe the allegations in the counterclaim in Defendant's favor.  *See Henley*, 945 F.3d at 1326; *Raymond H Hahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1181 (S.D. Fla. 2020) ("When reviewing a motion [to dismiss a counterclaim for failure to state a claim], a court, as a general rule, must accept the [defendant]'s allegations as true and evaluate all plausible inferences derived from those facts in favor of the [defendant]."). As the counterclaim alleges, Defendant executed change orders with terms that "departed from the terms that had been agreed upon," that were sometimes "impossible to achieve," and that "did not reflect the actual costs that [Defendant] incurred in implementing the changes, or the actual amount of time that such changes required," and were thus "inadequate to properly compensate" Defendant.  (Dkt. 18 at 27–28.)  Defendant did so, it claims, because Plaintiff "promis[ed] to make good on [the] costs later on."  (*Id.* at 28 (internal quotation marks omitted); *accord id.* at 26 ("Based on [Plaintiff's] assurances that [Defendant] would be compensated for its additional work, [Defendant] continued to work . . . and incurred significant additional costs.").)

These allegations support that Defendant did not agree to a change order's terms when it executed the change order; instead, Defendant relied on Plaintiff's assurances that the terms did not represent the entirety of Defendant's compensation. In fact, Defendant's first affirmative defense states that Plaintiff's claims "are barred,

in whole or in part, because there was a lack of assent, as [Defendant] did not agree to all of the unreasonable and repeated changes in specifications and scope that [Plaintiff] attempted to implement to" the four contracts.  (*Id.* at 18.)  Moreover, as Defendant observes, (Dkt. 24 at 11), the contracts provide: "Failure to agree to any adjustment shall be a dispute under the [d]isputes clause.  However, nothing in this clause shall excuse [Defendant] from proceeding with the contract as changed," (*e.g.*, Dkt. 26-1 at 18).   Thus, Defendant's performance under the change orders' terms did not necessarily indicate its agreement to the terms.

With respect to the fourth argument, about modification through course of dealing and reliance on oral statements, Florida law makes clear that "a written contract may be modified by a subsequent oral agreement or subsequent conduct of the parties, even though the written contract purports to prohibit such modification." *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1298 (M.D. Fla. 2009) (quoting *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 565 (Fla. Dist. Ct. App. 1998)).  Plaintiff does not acknowledge this principle of Florida law in its motion, (*see* Dkt. 20), and generally does not support its breach of contract arguments with caselaw or similar legal authority, (*see id.* at 13–19).  Consequently, the arguments are ineffective.  *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (holding that a party forfeited his position when he "cite[d] no legal authority to support it").

Plaintiff's fifth argument, about conditions precedent, fails because the nonperformance of such conditions is an affirmative defense and the counterclaim does not, on its face, establish that the defense applies.  *See Solymar Invs., Ltd. v. Banco*

*Santander, S.A.*, 672 F.3d 981, 996 (11th Cir. 2012) ("[A] defending party's assertion that a plaintiff has failed to satisfy conditions precedent necessary to trigger contractual duties under an existing agreement is generally viewed as an affirmative defense, for which the defensive pleader has the burden of pleading and persuasion." (emphasis omitted) (quoting *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010))); *see also Myrick v. Fulton County*, 69 F.4th 1277, 1297 (11th Cir. 2023) ("A complaint is subject to dismissal [for failure to state a claim] when its factual allegations, on their face, establish an affirmative defense that bars recovery."). As Defendant observes, typically "condition precedent affirmative defenses . . . are improper to raise in a motion to dismiss." (Dkt. 24 at 9 (citing *Killian Constr. Co. v. Pier Park Resort Hotel LLC*, No. 5:23cv127-MW/MJF, 2023 U.S. Dist. LEXIS 181250, at *10–12 (N.D. Fla. Aug. 25, 2023), and *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, No. 0:17-cv-62051-UU, 2018 U.S. Dist. LEXIS 59141, at *18–19 (S.D. Fla. Apr. 5, 2018))).)

Plaintiff speaks in terms of what Defendant "does not allege," "fails specifically to allege," and "has not—and cannot—allege," but Plaintiff does not identify the allegations in the counterclaim that confirm Defendant's failure to satisfy the conditions precedent. (*See* Dkt. 20 at 15, 17.) Although Federal Rule of Civil Procedure 9 requires Plaintiff to "deny[] . . . with particularity" "that a condition precedent has occurred or been performed," the rule allows Defendant to "allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The counterclaim contains allegations that Defendant "successfully

performed its obligations" under the contracts. (Dkt. 18 at 35; *accord id.* at 38–40.) Construed in the light most favorable to Defendant, *see Henley*, 945 F.3d at 1326, these allegations suffice to assert that Defendant has performed all conditions precedent set forth in the contracts.

Accordingly, the counterclaim plausibly alleges that Plaintiff materially breached its contracts with Defendant through the improper withholding of payments, changes to the scope of work, and the failure to equitably compensate Defendant. *See Perez v. W. World Ins. Co.*, No. 1:21-cv-22164-KMM, 2022 U.S. Dist. LEXIS 18936, at *9 (S.D. Fla. Feb. 2, 2022) ("To constitute a . . . material breach [under Florida law], a party's nonperformance must go to the essence of the contract." (internal quotation marks omitted) (quoting *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008))); *Sims v. Pampered Pets, LLC*, No. 3:16cv653/MCR/EMT, 2019 U.S. Dist. LEXIS 49354, at *8 (N.D. Fla. Feb. 20, 2019) (concluding that a plaintiff sufficiently alleged a breach of contract claim under Florida law when she asserted that the defendants breached the contract's "essential elements of . . . scope of work and . . . compensation due" by "failing to pay her in accordance with" the contract such that "she was not fully compensated for the work she performed"), *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 48779, at *1 (N.D. Fla. Mar. 25, 2019). Because, as mentioned above, the counterclaim also sufficiently pleads the other elements of breach of contract under Florida law, the court does not dismiss Defendant's breach of contract counts for failure to state a claim.

## 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under Florida law, every contract contains an implied covenant . . . requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). A party to a contract breaches the implied covenant of good faith and fair dealing when the party "fail[s] or refus[es] to discharge contractual responsibilities" through "conscious and deliberate" action that "unfairly frustrates the agreed common purpose," thereby "disappoint[ing] the reasonable expectations of the other party" to the contract. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010) (quotation omitted). However, "breach of the implied covenant of good faith and fair dealing is not an independent cause of action." *Centurion Air*, 420 F.3d at 1151. Rather, the cause of action "attaches to the performance of a specific contractual obligation" such that it cannot stand absent the "breach of an express term of a contract." *Id.* at 1151–52; *accord Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998) ("[A] duty of good faith must relate to the performance of an express term of the contract . . . ."). Further, claims based on the implied covenant "cannot be maintained . . . in derogation of the express terms of the . . . contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999); *accord City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. Dist. Ct. App. 1997) ("The implied obligation of good faith cannot be used to vary the terms of an express contract."). As a result, claims for breach of the implied covenant tend to "rise and fall" with claims for breach of contract. *Prestige Ins. Grp. v. Allstate*

*Ins. Co.*, No. 23-10595, 2024 U.S. App. LEXIS 3456, at *6 (11th Cir. Feb. 14, 2024).

In its counterclaim, Defendant ties the count for breach of the implied covenant of good faith and fair dealing to the breaches alleged in the breach of contract counts, which, as discussed above, concern changes to the scope of work and the failure to compensate Defendant. (Dkt. 18 at 41.) Defendant supports the count for breach of the implied covenant with allegations that although Defendant—not Plaintiff—was "responsible for supervising [Defendant's] subcontractors" under the contracts, Plaintiff "impermissibly" interfered with Defendant's work by "contact[ing] [Defendant]'s suppliers and offer[ing] them incentives related to their work" for Defendant. (*Id.* at 30, 41.) Plaintiff also interfered, Defendant states, by "repeatedly travel[ing] to [Defendant]'s . . . offices with little notice to observe [Defendant's] employees" at work. (*Id.* at 41 (internal quotation marks omitted).) According to Defendant, Plaintiff's interference "exerted undue and uncomfortable pressure" on Defendant. (*Id.*)

Accepting these allegations as true, *see Henley*, 945 F.3d at 1326, the court reasonably infers a connection between, on the one hand, the pressure caused by Plaintiff's interference and, on the other hand, Defendant's capitulation to Plaintiff's demands for extra work and reliance on Plaintiff's assurances of eventual compensation for the work. (*See id.*) The count for breach of the implied covenant plausibly alleges that by improperly withholding payments from Defendant, increasing the work to be performed by Defendant, and failing to compensate Defendant, Plaintiff "fail[ed] or refus[ed] to discharge" obligations in its contracts with Defendant. *See*

*Tiara Condo.*, 607 F.3d at 747.  The count also plausibly alleges that when Plaintiff did so, it acted "conscious[ly] and deliberate[ly]," "unfairly frustrate[d] the agreed common purpose" of the contracts, and thwarted Defendant's reasonable expectation of equitable compensation for work performed.  *See id.*  Accordingly, the count states a claim for relief.  *See id.*

Plaintiff submits that the count should be dismissed along with the breach of contract counts on which it depends and because it does not identify the provisions of the contracts that prohibit Plaintiff from communicating with Defendant's suppliers or visiting Defendant's offices to observe Defendant's employees at work.  (Dkt. 20 at 20–21.)  The court disagrees.  As explained above, the breach of contract counts state claims for relief.  Further, the allegations about communicating with Defendant's suppliers and visiting Defendant's offices support those asserting breaches of provisions that govern payment and scope of work and that establish Defendant's responsibility for supervising its subcontractors.  Thus, the court does not dismiss the count.  *See Dynamic Motion Rides GMBH v. Universal City Dev. Partners Ltd.*, No. 6:21-cv-752-RBD-LHP, 2022 U.S. Dist. LEXIS 191172, at *6–7 (M.D. Fla. July 19, 2022) (denying a motion to dismiss a count for breach of the implied covenant of good faith and fair dealing under Florida law because the plaintiffs "alleged sufficient bad conduct in connection with, and in addition to, conduct that breache[d] the contract").

### 3.  Unjust Enrichment and Quantum Meruit

Under Florida law, a counterclaim for unjust enrichment or quantum meruit must satisfy four elements: (1) the defendant conferred a benefit on the plaintiff, (2)

the plaintiff knew that the defendant conferred the benefit, (3) the plaintiff accepted or retained the benefit, and (4) it is inequitable for the plaintiff to retain the benefit without paying the defendant fair value for it. *See Merle Wood*, 714 F.3d at 1237. Plaintiff does not contend that Defendant's unjust enrichment and quantum meruit counts fail to allege these elements or lack sufficient factual support to make the allegations plausible, (*see* Dkt. 20 at 21–24), and the court agrees with Defendant, (*see* Dkt. 24 at 15–19), that when construed in Defendant's favor, *see Henley*, 945 F.3d at 1326, the counts plausibly allege the elements, (*see* Dkt. 18 at 42–44).

Instead, Plaintiff maintains that the counts fail because "express contract[s] exist[] concerning the same subject matter." (Dkt. 20 at 21–22 (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008)); *accord id.* at 23–24 (citing *WB's Septic & Sitework, Inc. v. Tucker*, 365 So. 3d 1242, 1246 (Fla. Dist. Ct. App. 2023)).) Relatedly, Plaintiff asserts, Defendant cannot plead the counts in the alternative because Defendant does not dispute the validity of the contracts. (*See id.* at 22 ("[Defendant] cannot seek relief by invoking the []contracts and simultaneously seek to disavow them.").) Defendant responds that the existence of the contracts does not bar the counts because at Plaintiff's direction, Defendant performed work not contemplated in the contracts. (Dkt. 24 at 15–19.) In Defendant's words, "there has been no finding of an express contract governing all of [its] claims," (*id.* at 19), so it is "entitled to plead its claims" in the alternative, (*id.* at 18). Defendant also points to allegations in the counterclaim challenging the validity of the contracts.

(*Id.* at 19.)

The court agrees with Defendant. "Florida has long recognized that an implied contract" enforceable under a theory of unjust enrichment or quantum meruit "may arise out of an express contract where a contractor . . . performs 'extras' not covered by the original contract." *Paschen v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49 (Fla. Dist. Ct. App. 2021) (citing *DeLotto v. Fennell*, 56 So. 2d 518, 520 (Fla. 1951)); *accord Se. Constr. & Rehab Specialist, LLC v. GAC Contractors, Inc.*, No. 5:20cv132-TKW-MJF, 2021 U.S. Dist. LEXIS 211790, at *3–4 (N.D. Fla. Apr. 19, 2021) ("Although . . . the existence of an express contract generally precludes claims for quantum meruit or unjust enrichment, this principle does not necessarily bar claims based on 'extra work' that was not within the scope of the original contract." (citing *Paschen*, 311 So. 3d at 49–50)). Moreover, pursuant to Federal Rule of Civil Procedure 8(d)(2)–(3), Defendant may plead the counts in the alternative. *See Se. Constr.*, 2021 U.S. Dist. LEXIS 211790, at *3–4 ("[B]ecause there is apparently a dispute as to whether the work for which [the p]laintiff was allegedly not paid was within the scope of the contract or expressly authorized in accordance with the terms of the contract, [the p]laintiff is not precluded from pleading claims for quantum meruit and unjust enrichment in the alternative to its breach of contract . . . claims." (emphasis omitted)). The court thus denies Plaintiff's motion with respect to Defendant's unjust enrichment and quantum meruit counts.

### 4. Promissory Estoppel

"In Florida, the doctrine of promissory estoppel 'applies when there is (1) a

promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced.'" *Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886, 889 (11th Cir. 2014) (quoting *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013)).  Defendant claims that to induce it to perform extra work and incur extra costs not reflected in change orders, Plaintiff promised to compensate Defendant for the extra work and costs.  (Dkt. 18 at 44–45.)  Defendant also claims that it performed the work and incurred the costs "in reasonable reliance on" Plaintiff's promises and that because Plaintiff has not adequately compensated Defendant for the work and costs, "injustice can only be avoided by enforcement of [Plaintiff]'s promises."  (*Id.* at 45.)  These claims satisfy the elements of promissory estoppel under Florida law.  *See Bloch*, 755 F.3d at 889.

Plaintiff contends that reliance on a promise that contradicts the terms of a written contract is unreasonable as a matter of Florida law and that Defendant's reliance on promises of payment is particularly unreasonable given the contracts' merger clause.  (Dkt. 20 at 24–25.)  To the extent that these contentions overlap with Plaintiff's breach of contract argument that the contracts bar modification through course of dealing and reliance on oral statements, the court rejects them on the basis explained above.  *See Siever*, 669 F. Supp. 2d at 1298.

In addition, although Plaintiff cites two cases to support its first contention, (Dkt. 20 at 24–25), those cases are distinguishable as addressing a motion for summary judgment rather than a motion to dismiss for failure to state a claim, *see Fin. Healthcare*

*Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1240 (S.D. Fla. 2007); *Harris v. Sch. Bd. of Duval Cnty.*, 921 So. 2d 725, 735 (Fla. Dist. Ct. App. 2006). Here, the court agrees with Defendant that "[t]he reasonableness of [Defendant]'s reliance is a question of fact not determinable on a motion to dismiss, particularly" because the court "has made no findings as to the validity and scope" of the parties' contracts. (Dkt. 24 at 20.) The caselaw supports that "factual development is necessary" before the reasonableness of Defendant's reliance is determined, *see Okun v. Provident Life & Accident Ins. Co.*, No. 8:11-cv-1162-T-23EAJ, 2011 U.S. Dist. LEXIS 95964, at *8 (M.D. Fla. Aug. 26, 2011), because such a determination is generally "a factual issue that cannot be resolved at the motion to dismiss stage," *Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV, 2009 U.S. Dist. LEXIS 116679, at *15 (S.D. Fla. Dec. 14, 2009); *accord Bishop v. Progressive Express Ins. Co.*, 154 So. 3d 467, 468 (Fla. Dist. Ct. App. 2015) ("[W]hether the promisee's reliance was reasonable [is] generally [a] question[] for the trier of fact."); *cf. Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1230 (11th Cir. 2012) (applying Georgia law to reverse summary judgment for the plaintiff on the promissory estoppel count in the defendant's counterclaim because a factual dispute remained as to whether the defendant reasonably relied on the plaintiff's alleged promise of payment).

With respect to the merger clause, the contracts provide that they "supersede[] any prior offers, negotiations, and agreements." (*E.g.*, Dkt. 26-1 at 15.) As Defendant points out, (Dkt. 24 at 20), it is not clear from the face of the counterclaim that Plaintiff's alleged promises occurred prior to the execution of the contracts, (*see* Dkt.

18), so the merger clause does not foreclose the promissory estoppel count. *See White Holding Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (finding that a merger clause defeated reasonable reliance on alleged oral promises when "the record reflect[ed] [that] the . . . promises were made prior to the execution" of the contract containing the clause). The court therefore does not dismiss the promissory estoppel count for failure to state a claim.

**CONCLUSION**

Accordingly:

1. Plaintiff's motion to dismiss (Dkt. 20) is **DENIED**.

2. Plaintiff shall answer Defendant's counterclaim in compliance with Federal Rule of Civil Procedure 12(a)(4)(A).

   **ORDERED** in Orlando, Florida, on February 24, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record